UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

TINA ROSA, *et al.*,

                         Plaintiffs,

    -against-                                   5:16-CV-1123 (LEK/TWD)

CITY OF SYRACUSE, *et al.*,

                         Defendants.

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

Plaintiffs Tina Rosa and Arthur Pugh commenced this civil rights action against defendants the City of Syracuse, Syracuse Mayor Stephanie Miner, and Commissioner of Finance David DelVecchio ("City Defendants"), and the Greater Syracuse Property Development Corporation ("GSPDC"), GSPDC Executive Director Katelyn Wright and GSPDC Board of Directors Chair Vito Sciscioli ("GSPDC Defendants"),[1] alleging violations of their rights under the Fifth and Fourteenth Amendments to the U.S. Constitution, as well as analogous provisions of the New York State Constitution.[2] Dkt. No. 1 ("Complaint"). The Complaint was filed after the City foreclosed on Plaintiffs' homes for unpaid taxes. E.g., id. ¶ 2. Presently before the Court are the City Defendants' motion to dismiss the Complaint for lack of subject-matter jurisdiction, Dkt. No. 14 ("City Defendants' Motion"), and the GSPDC Defendants' motion to dismiss the

---

    [1] Plaintiffs have voluntarily dismissed all claims against Wright and Sciscioli. Dkt. No. 25 ("GSPDC Motion Opposition") at 5–6.

    [2] Plaintiffs consent to the dismissal of their claim pursuant to Article I, § 6 of the New York State Constitution against GSPDC. GSPDC Mot. Opp'n at 5.

Complaint for failure to state a claim, Dkt. No. 19 ("GSPDC's Motion"). For the reasons that follow, the City Defendants' Motion is granted, and the Court need not reach GSPDC's Motion.

## II. BACKGROUND

### A. Factual Background

#### 1. *City Tax Foreclosure Procedures*

The Land Bank Act allows New York municipalities to establish land bank programs for the acquisition and sale of local real property. N.Y. Not-For-Profit Corp. Law section 1600 *et seq*. The purpose of the Land Bank Act is to "facilitate the return of vacant, abandoned, and tax-delinquent properties to productive use." Compl. ¶ 37. In March 2012, the City and Onondaga County formed GSPDC through an intermunicipal agreement. Id. ¶ 38. Local law allows the City to foreclose on real properties when the owner fails to pay her property taxes. Id. ¶ 5. The City may either auction a foreclosed property to a third-party or transfer it to GSPDC for a de minimis amount. Id. Upon transferring the delinquent property to GSPDC, the City grants the deed and full title to the property to GSPDC, which then holds the property until it is sold to a third-party. Id. ¶ 6. There is no minimum amount of back taxes that triggers this transfer process. Id. ¶ 7.

In addition to receiving the deed and title to a property, GSPDC receives all equity in the properties that are transferred to it from the City. Id. ¶ 8. In other words, neither the City nor GSPDC is required to pay to the original property owners any proceeds from the ultimate sale of its property that exceed the delinquent taxes, interest, penalties, expenses and attorneys' fees. Id. ¶¶ 8, 15, 39. Rather, the ultimate purchaser of a property retains that excess, which essentially denies the original property owner of any equity in the property that she had accumulated. Id.

The Syracuse Tax and Assessment Act, Syr. Rev. Gen. Ord. § 19-26 *et seq.*, outlines the methods through which the City may seize a parcel of real property for alleged unpaid taxes. Id. ¶ 30. Any tax debt that is over six months old may trigger the tax seizure process. Id. ¶ 31. After the expiration of six months, the Commissioner of Finance is required to publish notices in a newspaper once per week for a total of two weeks stating the amount of unpaid taxes, fees, and penalties owed. Id. The notices also state that the subject property will be sold at public auction if the amount owed remains unpaid and the dates for a redemption period. Id. After the expiration of the two-week period, the Commissioner may sell the property at public auction. Id. ¶ 32. The Commissioner must "bid in" on the property on behalf of the City in an amount sufficient to satisfy the alleged back taxes, fees, and penalties on the subject property. Id. The sale of a tax-delinquent property triggers a one-year redemption period during which the delinquent property owner may pay the amount of unpaid taxes, penalties, and fees to reacquire the property. Id. ¶ 33. However, before the seizure of the tax-delinquent property by tax deed, the City sends the property owner two letters, a "60-Day Notice" and a "30-Day Notice." Id. Each letter notifies the property owner that the tax-delinquent property will be transferred to the City by tax deed unless redeemed. Id.

Once a tax-delinquent property is acquired through the "bid in" process and transferred to the City through a tax deed, the City may then transfer the title of the property to GSPDC through a vote of the Syracuse Common Council. Id. ¶ 35. Local law states that the City may dispose of any property it acquires through tax deed in any manner approved by the ordinance of the Common Council and with the approval of the Mayor. Id. The City may also sell tax liens to private third-parties. Id. ¶ 36. Indeed, between 2007 and 2012, the City regularly sold tax liens to

for-profit corporations, including entities known as American Tax Finance and Guardian Law. Id.

### 2. Plaintiffs

Rosa is a Syracuse resident who purchased property located at 204 Davis Street for approximately $20,000 in 2009. Id. ¶¶ 41–42. She intended to rent out the home to supplement her income as a school bus driver. Id. ¶ 42. Rosa paid the full purchase price at the time she bought the property, and, at the time of closing, received a warranty deed stating that there were no outstanding liens on the home. Id. ¶ 43. She paid her local taxes on the property and was current on her payments at the time that the events at issue in this action began. Id. ¶ 44.

On December 8, 2015, the Syracuse Department of Finance sent Rosa a letter stating that her property had $889.92 in unpaid taxes, plus interest, fees, and penalties. Id. ¶ 45. The letter further stated that she had thirty days to pay the amount demanded or her home would be transferred to the City through the issuance and recording of a tax deed. Id. At the time that the letter was mailed, Rosa was visiting family outside of New York and did not become aware of the letter until she returned to Syracuse after the redemption date had lapsed. Id. ¶ 46. She was confused by the letter because she had received a warranty deed to the property and had paid all of her taxes on time. Id. ¶ 48. She later learned that the taxes allegedly owed on the property were the responsibility of the previous owner of the property. Id. Rosa visited Syracuse City Hall intending to pay the amount demanded in the letter, but she was told that there was nothing she could do because the property had already been transferred to the City and GSPDC. Id. ¶ 49.

On March 23, 2016, Rosa filed a notice of claim against the City, alleging that its seizure of her home was an unconstitutional taking and that her due process rights were violated. Id.

¶ 50. At the time her property was seized, Rosa rented the house to a tenant for $1,000.00 per month. Id. ¶ 52. She lost that income and has not been allowed to enter the house since it was seized. Id.

Like Rosa, Pugh is a Syracuse resident and lives at 106 Elmwood Avenue, the other property at issue in this litigation. Id. ¶ 53. Pugh is a disabled Army veteran, and purchased the Elmwood Avenue property for $8,500 in 2003. Id. ¶¶ 53–54. He later fell behind on his local property taxes. Id. ¶ 54. Pugh was contacted by an entity called Guardian Law, which had acquired some of the tax liens on the property, and began making monthly payments in the amount of $570 in an effort to satisfy his outstanding tax burden. Id. Pugh believes he paid approximately $25,000 in total to Guardian Law. Id. ¶ 55.

On October 28, 2014, Pugh received a notice from the Syracuse Department of Assessment stating that he owed $27,849.48 in delinquent property taxes for the years 2007–2012. Id. ¶ 56. The letter also stated that Pugh had sixty days to redeem the property by paying the full amount allegedly owed. Id. Pugh believed this amount was an error and visited the Department of Assessment to challenge the amount. Id. ¶ 57. He did not receive a clear answer as to why he allegedly owed this amount despite his consistent monthly payments towards his delinquent property taxes. Id.

On February 10, 2015, Pugh received a letter from the Syracuse Department of Neighborhood and Business Development stating that his home was scheduled for tax foreclosure. Id. ¶ 58. The letter explained that the Syracuse Common Council was scheduled to vote on transferring his property to the City in "May of 2015." Id. No other specific date was given. Id. On June 2, 2015, Pugh received a letter stating that the Common Council would

instead vote on the transfer of his home on July 13, 2015. Id. ¶ 59. Pugh continued to contest the amount of taxes that the City claimed he owed. Id. ¶ 60. His home was transferred to the City on November 6, 2015, and to GSPDC that same day. Id. ¶ 61. GSPDC currently owns the property. Id. ¶ 62.

On December 16, 2015, Pugh filed a notice of claim against the City alleging that he had lost approximately $49,000 in equity in his home when it was transferred to the City and GSPDC. Id. ¶ 63. He is now in danger of being removed from his home because GSPDC has initiated a summary squatter proceeding against him in Syracuse City Court. Id. ¶ 65.

### 3. *Plaintiffs' Claims*

The Complaint alleges that Defendants violated Plaintiffs' rights under the Fifth Amendment rights by taking their private property without compensation, and the Fourteenth Amendment by depriving them of property without compensation or due process. Id. ¶¶ 66–98. Plaintiffs also allege analogous violations of their rights under the New York Constitution. Id. ¶¶ 99–111.

**B. Procedural History**

Plaintiffs commenced this action on September 13, 2016. Compl. On November 7, 2016, the City Defendants moved to dismiss the Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. City Defs.' Mot; Dkt. No. 14-2 ("City's Memorandum"). On November 23, 2016, the GSPDC Defendants moved to dismiss the Complaint for failure to state a claim pursuant to Rule 12(b)(6). GSPDC's Mot.; Dkt. No. 20-1 ("GSPDC's Memorandum"). Plaintiffs oppose both motions. Dkt. No. 26 ("City Motion Opposition"); GSPDC Mot. Opp'n. Though originally assigned to the Honorable Glenn

T. Suddaby, Chief United States District Judge, this action was reassigned to this Court on September 11, 2017, following Chief Judge Suddaby's sua sponte recusal. Dkt. No. 31 ("Recusal Order").

### C. The City's Motion

The City Defendants argue that the Court lacks subject matter jurisdiction over Plaintiffs' claims pursuant to the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341. City's Mem. at 5–6. Specifically, they argue that the TIA bars this action because Plaintiffs challenge the collection and enforcement of local property taxes and are attempting to utilize the federal court system as a conduit to empty the City's coffers. Id. at 15–16. The City Defendants further note that New York provides several avenues by which a taxpayer can raise constitutional objections to municipal taxes, including a declaratory judgment action under the New York Civil Practice Law and Rules ("CPLR") section 3001 or New York General Municipal Law section 51, a § 1983 action in state court, or an administrative review action challenging the validity of the assessments. Id. at 16. The proper remedy to challenge a property seizure by tax deed, according to the City Defendants, is to commence a proceeding pursuant to Article 11 of the New York Real Property Tax Law ("RPTL"). Id. at 17. For these reasons, the City Defendants argue, the TIA applies to Plaintiffs' claims, and the Court lacks subject matter over this case. Id. at 17–18.

### D. GSPDC's Motion

The GSPDC Defendants argue that Plaintiffs have failed to allege facts plausibly suggesting that the GSPDC Defendants violated their rights. Dkt. No. 19-1 ("GSPDC Memorandum") at 3. Though they raise multiple reasons for dismissal, the GSPDC Defendants' core argument is that Plaintiffs have not alleged that they were actually involved in the seizure or

taking of Plaintiffs' properties. Id. at 3–6. Because GSPDC plays no role in the City's tax enforcement procedures and does not issue notices regarding delinquency to property owners, the Complaint fails to allege that the GSPDC Defendants actually violated Plaintiffs' rights. Id. at 4. The GSPDC Defendants further argue that Plaintiffs' claims fail because the Complaint alleges that they received notice of the unpaid taxes and risk of foreclosure, id., and they failed to exhaust available state remedies, id. at 6–7.

### III. LEGAL STANDARD

When defendants "move[] for dismissal under Rule 12(b)(1), as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." Town of Verona (Oneida Cty.) v. Cuomo, No. 13-CV-1100, 2013 WL 5839839, at *3 (N.D.N.Y. Oct. 30, 2013) (Kahn, J.) (quoting United States ex rel. Kreindler & Kreindler v. United Tech. Corp., 985 F.2d 1148, 1155–56 (2d Cir. 1993)).

A fundamental predicate to judgment in the federal courts is the existence of subject matter jurisdiction. "Dismissal of a case for lack of subject matter jurisdiction . . . is proper 'when the district court lacks the statutory or constitutional power to adjudicate it.'" Ford v. D.C. 37 Union Local 1549, 579 F.3d 187, 188 (2d Cir. 2009) (per curiam) (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)). A lack of subject matter jurisdiction cannot be waived, and may be raised by motion or sua sponte at any time. Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 107–08 (2d Cir. 1997). "If [a] court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). The party asserting subject matter jurisdiction carries the burden of

proving its existence by a preponderance of the evidence. E.g., Makarova, 201 F.3d at 113; Augienello v. FDIC, 310 F. Supp. 2d 582, 587–88 (S.D.N.Y. 2004).

## IV. DISCUSSION

### A. Subject Matter Jurisdiction

The TIA provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." § 1341. Additionally, "[a]lthough the TIA mentions only injunctions, its policy of comity bars declaratory judgment and 42 U.S.C. § 1983 damage actions as well." United Food & Commercial Workers Unions & Food Employees Benefit Fund v. DeBuono, 101 F. Supp. 2d 74, 76 (N.D.N.Y. 2000) (Kahn, J.) (alteration in original) (quoting Fiedler v. State of New York, 925 F.Supp. 136, 138 (N.D.N.Y. 1996)). "This is true even where a plaintiff raises constitutional issues." Greenberg v. Town of Scarsdale, No. 09-CV-2281, 2009 WL 7765836, at *3 (S.D.N.Y. Oct. 16, 2009), aff'd, 477 F. App'x 849 (2d Cir. 2012).

For an action to fall within the TIA's prohibition, two conditions must be met. First, a plaintiff must challenge "the assessment, levy or collection" of a state or local tax. Hibbs v. Winn, 542 U.S. 88, 104–05 (2004). Second, "the state remedies available to plaintiffs must be 'plain, speedy and efficient.'" Hattem v. Schwarzenegger, 449 F.3d 423, 427 (2d Cir. 2006). "[T]he TIA should be interpreted to preclude jurisdiction only where state taxpayers seek federal-court orders enabling them to avoid paying state taxes." Luessenhop v. Clinton Cty., 466 F.3d 259, 266–67 (2d Cir. 2006); see also Hibbs, 542 U.S. at 104–05 ("[I]n enacting the TIA, Congress trained its attention on taxpayers who sought to avoid paying their tax bill by pursuing

9

a challenge route other than the one specified by the taxing authority."). The Second Circuit has cautioned "that summarily dismissing plaintiffs' causes of action because they pertain to state tax administration in the most general sense would be a patent misreading of the TIA." Luessenhop v. Clinton Cty., New York, 466 F.3d 259, 265 (2d Cir. 2006). Accordingly, "an exception to the TIA exists when the taxpayer is bringing a 'third-party' suit, not seeking to stop the collection, or contest the validity of a tax imposed on plaintiff." Robinson v. Mattox, No. 13-CV-1289, 2015 WL 136171, at *3 (N.D.N.Y. Jan. 9, 2015) (citing Miller v. State of New York Div. of Tax Appeals, 480 F. Supp. 2d 574, 579 (E.D.N.Y. 2007)).

### 1. Challenge to the "assessment, levy or collection" of a tax

While the Court is not without sympathy for Plaintiffs' circumstances, it ultimately agrees with the City Defendants that the TIA bars Plaintiffs' claims from review in federal court. The first condition to invoke the TIA is met here because Plaintiffs seek to challenge the enforcement and operation of the City's property tax system. Plaintiffs target the City's method of collecting property taxes, namely foreclosure auctions in which Defendants retain proceeds "above the amount owed in unpaid taxes, penalties, and fees." Compl. ¶ 69. By "taking and transfer[ring] . . . amounts of equity that are above and beyond the amount of public debt owed," Plaintiffs argue, Defendants have violated Plaintiffs' rights under the Fifth and Fourteenth Amendments. Id. ¶¶ 73–74.

The Supreme Court has explained that "federal litigation to avoid paying state taxes (or to gain a refund of such taxes)" plainly "fall[s] within § 1341's undisputed compass." Hibbs, 542 U.S. at 106. "The TIA was appropriately interpreted to preclude the district courts from exercising jurisdiction in these instances because '[f]ederal-court relief . . . would have operated

to reduce the flow of state tax revenue." Luessenhop, 466 F.3d at 267 (alterations in original) (quoting Hibbs, 542 U.S. at 106). Here, Plaintiffs effectively seek a refund of property taxes, arguing that the amount they were compelled to pay exceeded the amount owed. E.g., Compl. ¶¶ 73, 92–93, 103.

Courts have regularly found the TIA to apply in circumstances similar to those alleged here. For example, in Izzo v. City of Syracuse, No. 98-CV-0778, 2000 WL 1222014 (N.D.N.Y. Aug. 3, 2000), aff'd, 11 F. App'x 31 (2d Cir. 2001), Judge Scullin held that the TIA barred claims premised on "the retention by the City [of Syracuse] of any surplus money, i.e., any amount of money received at auction in excess of the delinquency," because "[t]he retention of some—or all—of the proceeds from a tax auction" concerned "the manner in which a municipality administer[ed] its tax authority." Id. at *4. Courts in other circuits have reached similar conclusions. E.g., Wayside Church v. Van Buren Cty., 847 F.3d 812, 822 (6th Cir. 2017) (holding that the TIA barred an action seeking return of surplus from a county's sale of property following tax foreclosure and auction); Rafaeli, LLC v. Wayne Cty., No. 14-CV-13958, 2015 WL 3522546, at *1, 10 (E.D. Mich. June 4, 2015) (holding that the TIA and principles of comity deprived the court of subject-matter jurisdiction where plaintiff challenged "the foreclosure and taking of the entire equity in properties [that he owned] in order to satisfy minor tax deficiencies" because "tax delinquency foreclosure sales are inexorably intertwined with the collection of past due taxes: they are the 'mode of collection'"). Because Plaintiffs seek a return of proceeds which they claim the City has no right to retain, their Complaint is an attempt to "utilize federal courts as a conduit to empty state coffers," Luessenhop, 466 F.3d at 266, and thus barred by the TIA.

To the extent Plaintiffs challenge the amount of property tax owed, e.g., Compl. ¶¶ 82–85, 92–96, those claims are plainly barred by the TIA. See, e.g., Luessenhop, 466 F.3d at 266 ("Congress' intent in enacting the TIA was the prevention of a particular evil; namely, using federal courts as a vehicle to bring suits challenging the validity or amount of a particular tax assessed against an individual person or entity.").

Plaintiffs rely heavily on Luessenhop for the proposition that their claims are not barred by the TIA. City Mot. Opp'n at 6. In Luessenhop, homeowners brought suit claiming that the notice of foreclosure provided by the taxing authority of a state was constitutionally inadequate. 466 F.3d at 264. The Second Circuit concluded that the TIA did not bar the claim because the plaintiffs were not attempting to avoid paying taxes or obtain a refund, but raised claims "grounded in the means employed by the local governments to inform individuals that, due to their tax delinquency, title to their property will be transferred to the sovereign and sold at a public auction." Id. at 266–268. In so doing, the Lussenhop court distinguished between "challenge[s] to the method of collection," which are barred by the TIA, and "object[ions] to the procedures used to accomplish" a method of collection. Id. at 268 (citing Wells v. Malloy, 510 F.2d 74, 77 (2d Cir. 1975)). The court noted that the plaintiffs were "willing to pay the full amount of their property taxes, both current and back. Likewise, the taxpayers [did] not contest the government's authority to collect property taxes, nor [did] they dispute the assessments or amount owed." Id. Here, as explained above, Plaintiffs are effectively disputing the amount of taxes owed. Plaintiffs do not attack the adequacy of the notice they received, cf. id., but describe their claims as a "challenge [to] the City's unconstitutional and illogical methods of collecting those taxes." City Mot. Opp'n at 8. The TIA bars such challenges to state and local "methods of

collecting." Luessenhop, 466 F.3d at 268; see also Piedmont Gardens, LLC v. Leblanc, 168 F. Supp. 3d 391, 397 (D. Conn. 2016) (distinguishing Luessenhop on the basis that the "plaintiffs dispute what constitutes the full amount of the tax, as they contend that the amount should not include the marshal's fee, and they also object to the method utilized by the City of Waterbury to collect that part of the tax"); Dist. Lock & Hardware, Inc. v. Dist. of Columbia, 808 F. Supp. 2d 36, 42 (D.D.C. 2011) ("The [TIA] plainly bars challenges to state tax 'collection[.]'"); Izzo, 2000 WL 1222014, at *4 ("The retention of some—or all—of the proceeds from a tax auction is clearly the collection of real property taxes.").

Because Plaintiffs target the City's method of collection, and not the process they received notifying them of that method, the first requirement of the TIA is satisfied.

### 2. Available State Remedies

As an initial matter, it is important to note that Plaintiffs have failed to oppose the City Defendants' argument that there are "plain, speedy and efficient" state remedies available to Plaintiffs. City Mot. Opp'n. In this District, when a non-movant fails to oppose an argument offered in support of a motion, the movant's burden is lightened. See Rusyniak v. Gensini, No. 07-CV-279, 2009 WL 3672105, at *1 (N.D.N.Y. Oct. 30, 2009) ("As a result of Plaintiffs' failure to address Defendants' argument regarding Plaintiffs' First Cause of Action, Defendants' burden on this motion is somewhat lightened with regard to that cause of action."). In order to succeed on a non-challenged argument, a movant need only show that the argument possess facial merit, which has appropriately been characterized as a "modest" burden. Accord id. at *1 n.1 (collecting cases); Este-Green v. Astrue, No. 09-CV-722, 2009 WL2473509, at *2 & nn.2–3 (N.D.N.Y. Aug. 7, 2009). The Court concludes that the City Defendants have, at a minimum, met

that modest threshold burden with respect to their argument that Plaintiffs have "plain, speedy and efficient" remedies available under New York law. In any event, even subjected to the more rigorous scrutiny appropriate for a contested motion, the City Defendants have shown that Plaintiffs have adequate state remedies available.

"The test to determine whether a state remedy is satisfactory for purposes of the TIA asks whether the state remedy is 'adequate.'" DeBuono, 101 F. Supp. 2d at 78. "An 'adequate' state remedy has not been construed to mean a 'perfect' one; indeed, § 1341 will require federal abstention in favor of an adequate state remedy even if that remedy is less satisfactory than the remedy in federal court. The remedy must, however, be reasonably 'certain' before the TIA may be invoked." Id. at 78–79; see also Izzo, 2000 WL 1222014, at *3 ("A state remedy satisfies this standard when it provides a full hearing and judicial determination at which a taxpayer may raise any and all constitutional objections to the tax."). Similarly, "[t]here is 'no significant difference' between the 'plain, speedy and efficient' standard set forth in the [TIA] and the 'plain, adequate, and complete' standard governing comity. . . . [P]laintiffs seeking protection of federal rights in federal courts should be remitted to their state remedies if their federal rights will not thereby be lost." Long Island Lighting Co. v. Town of Brookhaven, 889 F.2d 428, 431 (2d Cir. 1989) (quoting Fair Assessment in Real Estate Ass'n, Inc. v. McNary, 454 U.S. 100, 116 n.8 (1981)).

Here, it is well established that New York offers several remedies that are "plain, speedy and efficient" to property owners who wish to challenge the amount of their property assessments. See, e.g., Henke v. City of Newburgh, N.Y., No. 11-CV-3663, 2012 WL 12883587, at *4 (S.D.N.Y. Apr. 30, 2012) ("[T]he remedies available in the New York state courts are sufficient to protect plaintiffs' rights regarding tax assessment challenges, . . . including the

procedures in Article 7 of the RPTL, Article 78 proceedings, declaratory judgment actions, and Section 1983 claims in state court."); Izzo, 2000 WL 1222014, at *3 ("Taxpayers complaining of real property tax assessments may also avail themselves of New York's declaratory judgment procedure [pursuant to CPLR § 3001]."). Additionally, if Plaintiffs wanted to challenge the foreclosure proceedings that resulted in the seizure of their properties, the City Defendants correctly note that Plaintiffs could have done so pursuant to Article 11 of the RPTL. See RPTL § 1124(3) ("Every person having any right, title or interest in or lien upon any parcel of real property described in [a foreclosure] petition may serve a duly verified answer upon the attorney for the Tax District setting forth in detail the nature and amount of his or her interest and any defense or objection to the foreclosure."); In re Cty. of Ulster, 990 N.Y.S.2d 337, 340–41 (App. Div. 2014) (holding that county court was required to determine redemption amount in tax lien foreclosure action where property owner's answer to petition raised issue of fact as to the amount owed and demanded a judicial determination (citing RPTL § 1130)).

Accordingly, the Court concludes that it lacks subject matter jurisdiction to adjudicate Plaintiffs' claims because the TIA, as well as principles of comity, bar this Court from reviewing what is essentially a local tax matter.

### B. GSPDC's Motion

Because the Court lacks subject matter jurisdiction over the Complaint, GSPDC's Motion is moot and need not be addressed. See Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990) ("[I]f [a court] must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be

determined." (quoting 5 Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1350 (1st ed. 1969)).

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the City Defendants' Motion (Dkt. No. 14) is **GRANTED**; and it is further

**ORDERED** that Katelyn Wright and Vito Sciscioli are **DISMISSED** as defendants in this action; and it is further

**ORDERED** that Plaintiffs' Complaint (Dkt. No. 1) is **DISMISSED without prejudice to refiling in state court** with respect to defendants City of Syracuse, Stephanie Miner, David DelVecchio, and the Greater Syracuse Property Development Corporation; and it is further

**ORDERED** that GSPDC's Motion (Dkt. No. 19) is **DENIED as moot**; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties pursuant to the Local Rules.

**IT IS SO ORDERED.**

DATED:    September 28, 2017
                Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge